# DECISIONS

OF THE

# COURT OF APPEALS OF KENTUCKY

## SEPTEMBER TERM, 1884.

CASE 34—RAILROADS—NEGLIGENCE—SEPTEMBER 4, 1884.

# L. & N. R. R. Co., v. Howard's Adm'r.

### APPEAL FROM MARION CIRCUIT COURT.

1. Appellants had the exclusive right to the use of their railroad at the place where decedent lost his life, and they can not be held responsible unless it should appear that those in charge of the train, after discovering the condition and danger of the party injured, could, by proper care, have avoided the injury.

2. The right of a railroad company to use its track is exclusive of the public, except where the public have the right to cross it, or where the use of the road in a reckless or improper manner must necessarily endanger the lives of those whose proximity to it requires the exercise of care and caution.

3. In passing through cities and towns greater care must be exercised than on that portion of the road where human beings have no right nor license to be, especially at night.

4. The mere fact that the speed of appellant's train is unusually fast at a point where no intelligent human being can have the right to be on the track, is of no significance in favor of intestate. He had no right to be on the track, and being a trespasser at 11 o'clock at night, willful neglect must be shown on the part of appellants before they can be held responsible.

ROUNTREE & LISLE AND W. LINDSAY FOR APPELLANT.

1. The proof shows without controversy that Howard was on appellant's track at eleven o'clock at night, and at a point where no county road passes, and where appellant's have the exclusive right to their track..

L. & N. R. R. Co., v. Howard's Adm'r.

He was a trespasser, and appellant's can not be held in damages, unless it be shown that the managers of the train knew he was upon it, and knowing it, took no means to prevent his death.

2. If an engineer is bound to suppose that the track will be obstructed, away from streets and public crossings, it necessarily follows that all rapid transit must be abandoned. R. R. Co. v. Hoehl, 12 Bush, 41; Kentucky Central R. R. Co. v. Thomas, 79 Ky., 163; R. R. Co. v Jones, 5 Otto, 442; Cooley on Torts, page 675; Houston's Case, 5 Otto, 697; Bellefontaine Railway Co. v. Hunter, 5 Am. Rep., 201; Brown v. Hannibal & St. Joe R. R., 11 Am. Rep., 420; Sher. and Red. on Neg., sec. 493; Sullivan v. Lou. Bridge Co., 9 Bush, 90; Baxter v. Troy and Boston R. R. Co., 41 N. Y., 502; Gen. Statutes., page 339, section 4; Lou., Cin. & Lex. R. R. v. Goetz, ad., 79 Ky., 443; Phil. and Reading R. R. v. Hummel, 8 Wright, 378; Cauley v. Pittsburg and Cincinnati R. R., cited in vol. 2, Am. and Eng. R. R. cases, page 4; Spearen's Case, 47 Pen. St., 300; L. & N. R. R. v. Cooper's Ad., MS. Op., February, 1882; Sher. and Red. on Neg., sec. 478; Bemis v. Connecticut and Passumpsic R. R., 1 Am. Rep., 340; Terre Haute and Ind. R. R. Co., 6 Am. Railway Rep., 359; Kentucky Central v. Talbott, 78 Ky., 622; L. & N. R. R. Co. v. Watkins, MS. Op., Sept 9, 1880; 2 Red. on Railways, chap. 27, sec. 193, subsec. 17; Dolfinger v. Fishback, 12 Bush, 474; Zimmerman v. Hannibal & St. J. R. R., 71 Mo.; reports cited in full in vol. 2, Am. & Eng. R. R. Cases, page 194; Civil Code, secs. 326, 328; Perry v. Pusey, MS. Op., Court of Appeals, March, 1882; Lou. City R. W. v. Weams, MS. Op., Court of Appeals, October, 1882; Quaid v. Cornwall, 13 Bush, 601.

WM. C. & S. A. RUSSELL FOR APPELLEES.

1. Although appellee suing for an injury to his intestate resulting from gross negligence of the intestate, was himself guilty of negligence, if, nevertheless, the injury might have been avoided by the proper care of appellants, such contributive negligence will not exonerate appellants.

2. The instructions asked for by appellants would permit an engineer to blindfold himself and dash ahead in total disregard of human life, and if death ensue no responsibility will attach, because the engineer did not see and could not see the peril.

3. Instruction (a) is error, because it permits appellant to run at the most reckless speed, even though such speed endanger the public. Bell v. Rowland, Hard., 301; Gallatin v. Bradford, 1 Bibb., 209; Shay v. R. & S. T. Co.; 1 Bush, 109; Jarmen v. Howard, 3 Mar., 384; McPherson v. Hickman, 1 Mon., 170; Rowland v. Hanna, 2 B. M., 129; Easeley v. Easeley, 18 B. M., 93; Stephens v. Brook, 2 Bush, 138; Fightmaster v. Beasley, 7 J. J. M., 411; Davis v. Curry, 2

Bibb; P. & M. R. R. Co. v. Hoehl, 12 Bush; L. & N. R. R. v. Collins, 2 Duv., 116; L. & N. R. R. v. Sickings, 5 Bush, 4; L. & N. R. R. v. Filbern, 6 Bush, 575; L. C. & L. R. R. v. Mahoney, 7 Bush, 239; 12 Bush, 43; Sullivan v. Lou. Bridge Co., 9 Bush, 90; Jacob v. L. & N. R. R. Co., 10 Bush, 267; P. & M. R. R. Co. v. Hoehl, 12 Bush, 43.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

In July, 1881, a young man by the name of John Howard was run over and killed by the cars of the appellant, at a point near the town of Chicago, in the county of Marion. The appellee, Thomas Roberts, qualified as the administrator of his estate, and instituted the present action under the statute against the railroad company, alleging that the death of his intestate was caused by the negligence of its employes in running the train. There are two counts in the petition; the one for ordinary negligence, and the other for willful neglect. At the close of the evidence for the plaintiff, the appellant moved for a peremptory instruction that was refused, and upon the final hearing a verdict and judgment was rendered against the appellant for $5,000.

This court has often held that, where the evidence conduced in any degree to establish the right of recovery, it is improper to instruct the jury to find for the defendant, and before a warrant is directed to be entered, it must appear, admitting the testimony to be true, and the expenses paid, deducible from it, the party seeking to recover has failed to make out his case.

With this rule of practice long established and often recognized by this court, it is proper to determine in the first place the question arising on the motion for a

non suit, as it may obviate the necessity for considering the other propositions presented in the brief of counsel. Jarmen v. Howard, 3 Mar., 384; McPherson v. Hick-man, 1 Mon., 170; Rowland v. Hanna, 2 B. M., 129; Easeley v. Easeley, 18 B. M., 93; Bell v. Rowland, Hard., 301; Gallatin v. Bradford, 1 Bibb., 209; Shay v. Railroad Company, 1 Bush, 109.

It appears from the evidence on the part of the plaintiff that defendant's road was about one-fourth or one-half mile south of where the appellee's intestate was killed is very crooked, passing through several cuts and around curves, and that this part of the road the cars passed over before reaching the intestate. The latter had been working as one of the section hands on defendant's road prior to his death, and whether he was at the time in the employment of the company does not distinctly appear, nor is it important to inquire in view of the facts before us.

The intestate was boarding with Pat Kearns, who was the section boss, and lived about one and a half miles north of Chicago, and about one-half miles north of where intestate was killed. The intestate had been to a dance near Chicago, and in going to his boarding house at Kearns', had gone on to the railroad and was following its track to his destination instead of the ordinary dirt road, and while on the company's road, about eleven or twelve o'clock at night, was run over and killed.

The killing was on a long fill near a curve, with a down grade in the direction the engine was going at the time of the accident, and away from any town or road crossing. The engine had become disabled in some

way, and was on its way to Louisville for repairs, and had no train attached to it. From the testimony of the appellee, and this could alone be considered on the motion, the engine was running with great rapidity, ringing no bell or blowing any whistle at Chicago or any of the crossings. No one was on the engine and tender but the engineer and fireman; it was a clear night, but no moon, and the employes seem not to have known until the next day that the intestate had been killed by the train. Howard knew, or should be presumed to have known, that trains were likely to pass at any time on the road, and that his trip to his boarding house would be attended with danger. He was heard singing and making a loud noise as he pursued his way, and seemed to be thoughtless as to the danger. He certainly ought to have known that there was nothing to advise the engineer, or those in charge of the engine, to look out for persons traveling upon that part of defendant's road at that hour of the night. If, in a town, or at a road crossing, or approaching either, it would have been the duty of the engineer to give the proper signal of the train's approach, and even with the signal given, the company might be held responsible for the reckless running of the train at the crossing, as was held by this court in the case of the Louisville and Cincinnati Railroad Company v. Goetz's Administrator. In that case the right to the use of the road at the crossing was mutual, the company having the right to run on it with its trains and the intestate the right to cross the track, it being a part of the ordinary highway. In the character of case cited, both parties must exercise such care as men of common prudence and

L. & N. R. R. Co., v. Howard's Adm'r.

intelligence would ordinarily use under such circumstances. In the case before us, the company had the exclusive right to the use of the road at the place where the appellee's intestate lost his life, and we see no reason for making the company responsible, unless it should appear that those in charge of the train, after discovering the condition and danger of the party exposed, could, by the exercise of the proper care, have avoided the injury.

The error committed by the court below is embodied in instruction No. 1, given at the instance of the plaintiff, with reference to the rules of the company, and for that reason a non suit was denied.

There is a rule of the company requiring "all special and irregular trains, whether running by telegraph orders or not, must be run with great care, and the whistle sounded one half mile from all abrupt curves and obscure highway crossings, and when approaching any stations." This rule was read to the jury as evidence, against the objection of the appellant, and proof introduced conducing to show that no whistle was heard at the curve, or at any other time until it reached some station far beyond the point where the accident happened. This rule of the company, together with other rules regulating the running of trains, is made part of the record, and while they have been adopted for the safety of the passengers and the proper running of the trains, and to notify those who have the right to the use of any part of the road of the train's approach, the rule in question with reference to blowing the whistle when approaching abrupt curves was intended to avoid obstructions, and not designed for the protec-

tion of those who are so reckless of their own lives as to undertake to convert a railroad track into a common passway. The court told the jury that it was the duty of those in charge of the train to blow the whistle at abrupt curves, and if no such signal was given when Howard was killed, and if it had been given he would not have been killed, they must find for the plaintiff.

This instruction should not have been given, but on. the facts of the case as presented by the plaintiff, a verdict for the defendant should have been entered. After the intestate had placed his life in peril, it was the duty of those in charge of the train when made aware of his danger, to use all reasonable means at their command to save his life, but the engineer nor the fireman were required to know, or to anticipate the presence of any intelligent human being on that part of the road at eleven o'clock at night. The right of a railroad company to use its track is exclusive of the public, except where they have the right to cross it, or where its use in a reckless or improper way must necessarily endanger the lives of those whose proximity to the road requires the exercise of care and caution by those running railroad trains. In passing through cities, towns, or places where persons congregate, greater care and caution must be exercised than on that portion of the road where human beings have no right or license to travel. The speed in which the train is propelled in such a case can not be said to be willful neglect on the part of the company, as to one who voluntarily places himself on the track, and is injured by reason of his own carelessness.

To adjudge otherwise, would be to convert the track.

of the railway into a public resort for the use of all who choose to go upon it, nor is it negligence of a less degree for which a recovery can be had ; for the act of the party complaining was the direct and proximate cause of the injury. It is evident from the facts before us that the intestate lost his life by placing himself in such a position as made the danger to himself imminent, and but for such reckless action on his part would have received no injury. There was the absence of all care on the part of the intestate in protecting himself against the danger, and while it was the duty of those in charge of the train to avoid running over him, and to exercise even more than ordinary care for that purpose when apprised of the danger to which he was exposed, in this case there is no proof, or any fact, from which an inference might be drawn that the company's employes knew that the plaintiff's intestate was on the track, nor was there any reason upon which they could have based the belief that the intestate or any one else was using the track of the road as a passway at or near the point where the injury was inflicted. The plaintiff's own testimony shows gross neglect on the part of the intestate and the absence of any neglect on the part of the employes of the company.

Rules and regulations adopted by the company for the protection of its passengers and trains do not apply to trespassers on its road, whose own wrongful and negligent conduct places them in danger, and the only obligation or duty on the part of the company or its employes in such a case is, when made aware of the danger, to avoid inflicting any injury, if, by the exercise of ordinary diligence, they can prevent it.

When the facts are conceded upon which the charge of negligence is based, it then becomes a question of law as to whether a case of negligence has been established, and the plaintiff's own testimony failing to show any cause of action, the court below should have instructed the jury to find for the defendant.

The judgment below is therefore reversed, and the cause remanded with directions to award a new trial and for proceedings consistent with this opinion.