LOUISVILLE & N. R. Co. v. COOPER'S ADMR.

[Abstract Kentucky Law Reporter, Vol. 7—102.]

**Liability of Railroad Company for Injuring a Trespasser.**

While a railroad company is liable if it wilfully injures one found walking on its right of way, it can not be held liable when such a trespasser is injured because of his own gross negligence, and the injury is not wilfully done.

**Negligence of Persons Running a Train.**

Where employes in charge of a railroad train see a person walking on or near the company's tracks at a distance of two hundred yards or more, they have a right to suppose that such person will step to one side and avoid danger and where the person is a deaf mute. but this fact is unknown to them, they are not required to act differently than they would be if he was not a mute.

**Trespasser on Right of Way.**

A railroad company has the right to the exclusive use of its road at a place other than a crossing, for the purpose of running its trains, and when one is guilty of such gross negligence as to place himself in imminent peril by walking on the track at such a place, the court will not presume that injury to him was caused by the negligence of those in charge of the train. In such a case, it must be shown that the employes were aware of the danger to which the trespasser is exposed and failed to exercise reasonable diligence to prevent the injury before a recovery can be had.

APPEAL FROM MARION CIRCUIT COURT.

May 21, 1885.

OPINION BY JUDGE PRYOR:

This case has been heretofore considered upon substantially the same testimony and the judgment below reversed (See 11 Ky. Opin. 519). On the return of the case a verdict was returned into court for the sum of five thousand dollars, and the railroad company is here again asking a reversal.

The appellee's intestate was a deaf mute, and while walking on appellants' right of way was run over by its cars and killed. The recovery by his administrator was under Sec. 1, Chap 57, of the General Statutes. The jury having found that there was no wilful negligence, therefore no recovery could have been had under the third section of that chapter. The accident happened on the Knoxville branch of the appellants' road, a short distance from St. Mary's station, and when the train was running at the speed of thirty miles an hour. It was in a cut some twelve feet deep and between two cattle guards, not far from Hardin Creek bridge. The deceased was using appellants' road as a foot way without any authority whatever, and when its use in such a manner was in nowise connected with the business of the company. There was neither a public nor private crossing at the place where the unfortunate man lost his life, but on the contrary the entire testimony for the appellee conduces to show that it was at a point on the road where any reasonable man must have necessarily apprehended danger to his person from the passing trains, and also at a place where those in charge had no reason to anticipate the presence of a human being.

The intestate resided in the State of Texas, and from the evidence in the case had never before been on this right of way and was entirely ignorant as to the time when the trains ordinarily passed through this cut or along this part of appellant's road. He was a printer by trade and a man of more than ordinary intelligence, and although called a deaf mute was not altogether insensible to sound; and from the testimony of the appellee might have heard the approach of the train, or been given warning by the blowing of the whistle and the ringing of the bell; still in his condition he

was less likely to hear the approach of the train, however great the warning, than one who had not lost his sense of hearing.

It is manifest from his condition and with the intelligence he is shown to have possessed that he was guilty of the greatest character of negligence in placing himself in such imminent danger.

There is a curve in the track as you approach this cut that, from the proof, must have rendered it difficult by those running the train to have seen a man upon the track at the place intestate was killed until the train was almost upon him, and while the testimony on this point is conflicting, that evidence introduced by the appellee showing that he might have been seen at a distance of 200 yards or more, still if the employes of the company had seen the man on the track they had the right to suppose, as reasonable and prudent men, that the intestate would step to one side and avoid the danger. He was walking on the cross ties on the outside rails, or if on the track all he had to do to prevent danger to his person was to step from the track to the edge of the cut so that the passing train would not strike him.

This the company, or those in charge of the train, had the right to suppose he would do, even if seen by them at a distance of two or three hundred yards, and if he could have heard as men ordinarily do there would have no such accident. There is no evidence that the employes knew the intestate was deaf, and therefore the case must be considered as if he was possessed of all his senses. There is an entire absence of evidence on the part of the plaintiff that the employes saw the man, or was aware of his perilous condition, until he was struck by it and killed, the only proof being that the man might have been seen by those in charge of the train. There was no public crossing at this point where the blowing of the whistle was necessary, and the utmost vigilance required to be used to apprise those intending to cross the track of the coming train. The company had the right to the exclusive use of its road at this particular place for the purpose of running its trains, and when one is guilty of such gross negligence as to place himself in such imminent peril the court will not presume or allow a jury to presume that injury to one guilty of this reckless conduct was caused by the negligence of those in charge of the train. It must be shown in such a case that the employes or some of them were aware of the danger to which the person had exposed himself, and with

this knowledge on their part failed to exercise reasonable diligence to prevent the injury before a recovery can be had. Some of the witnesses for the appellee heard the blowing of the whistle long before the train approached the cut, perhaps at St. Mary's, and having to cross under the track or the railroad bridge stopped their horses in the head of the creek until the train passed.

They were exercising more diligence when away from the track, to prevent their horses from being frightened, than the intestate was, on the track, to preserve his own life, and when he must have known he was in great peril, his own negligence causing his death. The law will not presume from the mere fact that the train was coming at a rapid rate of speed, and those in charge of the train might have seen the deceased, they were aware of his danger and failed to use a reasonable effort to save.

The special findings in this case did not authorize the judgment. The jury is asked to say "whether the employes of the defendant, by ringing the bell and blowing the whistle, gave the intestate such warning of the approach of the train as would have apprised an ordinary man of his danger in time to enable him to escape. The jury responded "No."

Such response did not fix the liability of the defendant, as it is evident from the defendant's testimony that the ringing of the bell and blowing the whistle did not save him. After they saw the intestate on the track, and discovered that he did not intend to leave it, it was their duty to stop the train and use all reasonable diligence to prevent injuring him.

The burden was on the plaintiff to make these facts appear, and having failed to do so a peremptory instruction should have been given. *Baltimore & Ohio Railroad* v. *The State,* 62 Md. 479; *L. & N. R. Co.* v. *Howard's Admr.,* 82 Ky. 212, 6 Ky. L. 163.

If the jury should have been permitted to consider this case on the entire testimony, four witnesses for the defense saw the man about the time the engineer did, about fifty or seventy-five yards in advance of the train. The bell was ringing and the whistle sounded; the air brakes applied and the engine reversed, but it was too late to save the intestate's life. There is no testimony contradicting this proof except the negative statements of those on horseback, in the head of the creek, who say they heard no bell or whistle until after the killing.

Considering the testimony of the plaintiff alone or in connection with that of the defendant, no case for a recovery is shown. Judgment therefore is reversed and remanded with directions to award a new trial and for proceedings consistent with this opinion..

Judgment *reversed*.

*Wm. Lindsay, Rountree & Lisle, for appellant.*

*Russell & Avritt, for appellee.*

[Cited, *Brown's Admr. v. L. & N. R. Co.*, 97 Ky. 237, 30 S. W. 639.]

