CASE 17—PETITION ORDINARY—MARCH 9.

# Newport News, &c Co. v. Deuser.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

1. RAILROADS—DUTY TO TRESPASSERS ON TRACK.—In this action against a railroad company to recover damages for injuries to plaintiff resulting from his being struck by a train of cars while he was walking on defendant's track, as the engineer admits he saw plaintiff when several hundred yards away, and believed from his movements he did not intend to leave the track until he reached a crossing some distance in front of him, the only issues were whether the danger signals were given in time to enable the plaintiff to step aside, and whether all reasonable means compatible with the safety of the passengers were used by the engineer to stop the train; and the court should, by its instructions, have confined the jury to these issues, and not have submitted the question as to the company's duty to keep a "look out," or as to plaintiff's knowledge of the approach of the train.

2. SAME—INSTRUCTIONS TO JURY.—It is immaterial so far as plaintiff is concerned whether a whistle was blown for a crossing near by, and as there was some testimony tending to show this signal was not given, it was misleading to instruct the jury that it was the duty of defendant to give "timely warning" by bell or whistle of the approach of its train to such persons as happened to be on its tracks in front of its moving train, as the jury may have supposed this "timely warning" referred to the signal for the crossing.

3. SAME.—In thickly populated vicinities, where many persons are known to be constantly passing about and across the road, as in a large city, the public interest and a due regard for human life require a constant look-out and the giving of appropriate signals, such as blowing the whistle and ringing the bell. But the conditions to which that rule applies do not exist here.

P. H. DARBY FOR APPELLANT.

1. Appellant was an adult in the apparent possession of his faculties, and the engineer seeing him upon the track had the right to assume that he would get out of the way of the train, and to act upon that assumption until there was reason to fear he might not do so. (Lingenfelter v. L. & N. R. Co., 9 Ky., Law Rep., 116; L.

& N. R. Co. v. Coleman, 10 Ky. L. Rep., 81; Wren v. Louisville, &c., Ry. Co., 14 Ky. Law Rep., 325; L. & N. R. Co. v. Krey, 16 Ky. Law Rep., 64; Finlayson v. C. B. & Q. R. Co., 1 Dillon, Cir. Ct. Rep., 599.)

2. The increased or additional duty of trainmen at places where there is a customary use of the track by the public, over what is required of them at other places, relates to the precaution to be taken for the discovery of persons who may be upon the track. The duty to avoid injury to a person whose presence upon the track has been discovered is the same at all places.   (L. & N. R. Co. v. Schuster, 10 Ky. Law Rep., 67; Hammill v. L. & N. R. Co., 94 Ky., 343; Lingenfelter v. L. & N. R. Co., 9 Ky. Law Rep., 116.)

3. License to walk on the track of a railroad in a country district is not implied from the mere fact that persons have frequently done so.   (L. & N. R. Co. v. Howard, 82 Ky., 218).

BULLITT & SHEILD of counsel on same side.

A. T. KENDALL and ANDREW A. HAGGAN for appellee.

If the engineer did not, after discovering appellee's peril, use such reasonable means as he had at hand to avoid injury, the company is liable.   And it was the grossest of negligence for the engineer to let his engine run so close to appellee before giving notice of its approach.   (L. & N. R. Co. v. Schuster, 10 Ky. Law Rep., 65, L. & N. R. Co. v. Coleman's Admr., 10 Ky. Law Rep., 81; Shelby's Admr. v. Cincinnati, &c., R. Co., 8 Ky. Law Rep., 929; Wren's Admr. v. Louisville, &c., R. Co., 14 Ky. Law Rep., 324; Hammill's Admr. v. L. & N. R. Co., 14 Ky. Law Rep., 291.)

JUDGE HAZELRIGG delivered the opinion of the court.

The appellee while walking along the track of the appellant was overtaken, struck and seriously injured by the train of the latter.

The accident occurred at a point about one and one-half miles south of the limits of the city of Louisville, and on a cattle guard at the intersection of a lane crossing the track at right angles.   The appellee had walked on the track for a mile or more, and his objective point was the lane, where he intended to turn off for a neighboring store.   He

had nearly reached the lane when the engineer in charge of the train following him discovered his presence on the track, and concluding from the movement of the appellee and the increase of his gait, that he did not intend to quit the track until he reached the lane, the engineer at once gave the usual alarm signals, applied the air brakes and reversed the engine.

This action was induced by the belief—as he testifies—that he was doubtful if the appellee could reach the lane in safety, and as there was no obstruction on either side of the road to prevent his stepping aside, he thought by the signals to induce him to do so, and if not, his slowing up might afford him sufficient time in which to reach the lane. · It is shown that the stop made was a remarkably quick one, but not sufficiently so to save the unfortunate traveler, who was caught on the cow-gap, his injuries resulting in the loss of an arm and a leg.

At his suit against the company he was awarded a verdict for $3,750, and from the judgment thereon this appeal is prosecuted.

On a former appeal—to the Superior Court—the judgment, then for $2,000, was held not to be sustained by the evidence, and it is now urged that the appellant's motion for a peremptory instruction should have been sustained at the close of the plaintiff's testimony, or at any rate, upon the conclusion of the case.

Looking to this point, we have examined the proof carefully, and it is apparent that upon the question of whether or not the alarm signals were in fact given in time to afford the appellee opportunity to step aside, there is some conflict among the witnesses. The preponderance of the testimony, it may be admitted, sustains the trainmen that the alarm was given when the train was several hundred yards from

the appellee and the lane where the injury occurred; but there is some proof conducing to show that the train, to use the language of a witness, was "right on" the appellee, or within twenty-five yards of him, when the signals were first given.

For the train to run twenty-five yards at the rate it was then going, which was thirty miles per hour, required less than two seconds of time, and whether this was sufficient time for the appellee to have escaped the danger must be left to the jury. The question is, how far was the train from the appellee when the danger signals were first given? Upon the answer to this question depends the determination of the inquiry, were all reasonable means at hand, compatible with the safety of the passengers, used by the engineer to avoid the injury, after the admitted discovery of the plaintiff on the track?

These are the only questions arising under the proof. The law prescribing the duty of trainmen to keep a "look out" for persons on the track is not applicable here, because the engineer saw the plaintiff when 275 or 300 yards from him.

As to the law requiring greater caution on the part of those in charge of trains when running where the road bed is in use by pedestrians as a footway, this has no application here for the same reason. So, too, is it immaterial whether or not the whistle was blown for the crossing at the lane. The rule of the road to blow the whistle for that crossing at a point much further south than where it claims to have sounded the alarms on this occasion is shown by all the employes of the road, and it is in fact established by a preponderance of the proof that they did so on this occasion, but this was for the benefit of those crossing the lane and not for those who were leisurely using the track for travel in preference to a convenient public thoroughfare, as there appears

to have been on either side of the track. In thickly populated vicinities, where many persons are known to be constantly passing about and across the road, as in a large city, the public interest and a due regard for human life require a constant lookout and the giving of appropriate signals, such as blowing the whistle and ringing the bell. No such condition is shown here as in the cases laying down the rule indicated. (See L. &N. R. Co. v. Schuster, 10 Ky. L. R. 67; Paducah &c. R. Co. v. Hoehl, 12 Bush, 50; L. & N. R. Co. v. Howard, 82 Ky., 218.)

But as said before, it is admitted by the company that its agents early discovered the appellee on its track, and his determination to stay there until he reached the lane, and its case is made to rest on its contention that it gave the alarm signals at once and used every available effort to stop the train in time for the appellee to have escaped. It is obvious that upon hearing such signals, the exercise of reasonable care required the appellee instantly to get off the track, not to run to some place that he might choose to get off.

The instructions in this case, twelve in number, submit a variety of issues foreign to the case, the effect of which was necessarily confusing to the jury and in fact misleading.

The first one required the defendant to give timely warning by bell or whistle of the approach of its train to such persons as happened to be on its track in front of its moving train. Of course, when some of the witnesses testified that they did not hear the whistle for the crossing at the lane, the conclusion was easily reached that timely warning of the train's approach had not been given to the appellee, who came within the description of "persons happening to be on the track," and his case was therefore made out.

In another, the negligence of the plaintiff which would defeat a recovery was said to be his knowledge of the approach

Newport News, &c Co. v. Deuser.

of the train and attempt to cross the cattle guard in front of it.    If he did not know of it, therefore, it would seem to follow he must recover, but this is not the law.    His knowledge is immaterial so far as it affects the company.

The question of the company's duty to keep a "look out," as prescribed in some of the instructions, is eliminated from the case, because of the engineer's admission that he saw the plaintiff and his effort to reach the cattle guard when several hundred yards away.

Resting under the belief which he says he then entertained, it was the duty of the engineer at once to give the danger signal, and stop his train, and the sole issue is, did he do so in time to afford the plaintiff an opportunity to step aside, as a prudent man should have done. The plaintiff testifies that no signals of any kind were given, qualifying the statement, however, by saying that he at least heard none, but every witness in the case proved otherwise.    The signals were certainly given.    The question is, when?

On the return of the case, the proof should be confined to the issues indicated and the instructions be likewise limited to those issues.

For the reasons indicated the judgment is reversed for further proceedings.