Case 31.—ACTION BY ROBERT H. STITH'S ADM'X AGAINST THE ILLINOIS CENTRAL RAILROAD CO. FOR CAUSING THE DEATH OF PLAINTIFF'S INTESTATE.—March 25.

## Illinois Central Ry. Co., &c. v. Stith's Adm'x.

| 120 | 237 |
|-----|-----|
| f134 | 465 |

Appeal from Hardin Circuit Court.

WEED S. CHELF, Circuit Judge.

Judgment for plaintiff. Defendants appeal. Reversed.

Railroads—Causing Death—Venue of Action—Negligence of Intestate—Knowledge of Danger—Risk — Emergency — Decision — Prompt Action—Precaution—Rules—Negligence of Approaching Train—Question for Jury—Tests of Air Brakes—Competency.

1. Railroads—Causing Death—Action by Personal Representative—Venue—Under Civil Code, section 73, providing that "an action against a carrier for an injury to a passenger or to other person or his property must be brought in the county in which the defendant, or either of several defendants, resides, or in which the plaintiff, or his property, is injured, or in which he resides, if he resides in a county into which the carrier passes," a personal representative who resides in Hardin county, into which county the carrier passes, may bring an action in said county against the carrier for negligently causing the death of her intestate, though he was killed in Grayson county, and at the time of his death resided in Jefferson county.

2. Negligence of Intestate—Knowledge of Danger—Risk—Right of Protection—While plaintiff's intestate was guilty of negligence in taking his engine on the main track of the railroad in violation of the rules of the company at a station where there was at the time no telegraph operator, in order to supply his engine with water, and when he knew a fast through passenger train was then due to pass said station, and which was entitled to the right of way, it does not necessarily follow that he cut himself off from all right of protection, considering the steps and precaution he took to notify the approaching train of his situation.

3. Situation of Intestate—Emergency—Decision—Prompt Action—Precautions—Rules of Company—Negligence of Approaching Train—Question for Jury—Where deceased, who was the engineer of a work train, was awakened early in the morning by his night watch and found his engine leaking and nearly dry, which he was compelled to supply with water from the tank nearby on the main line, or draw his fire and let his engine die, and in the emergency decided to move his engine on the main track to the water tank, and flag the fast passenger train, which was then past due, but was usually from a half hour to four hours late, but before doing so sent his flagman with his red light and a torpedo to a curve 1,120 yards from the water tank and left the switch open with its red light shining squarely down the track in the direction of the approaching train, 905 yards from the curve on a straight line to the curve, the rules of the company being for "engineers to keep a constant lookout for signals and the position of

Illinois Central Ry. Co., &c. v. Stith's Adm'x.

switches while running, and not to pass red signals and red lights on the switches, but must stop and ascertain the cause," the only question that should have been submitted to the jury was whether those in charge of the fast train saw, or by the exercise of ordinary care could have seen, the train in charge of deceased in time to have stopped or checked their train and saved deceased from injury and death. If so, plaintiff should recover, otherwise the finding should be for defendant.

4. Tests of Air Brakes—Competency—Advertisements of professed tests of air brakes in the back of a book of instructions with reference to the use and operation of such brakes were incompetent as evidence in the case as they seem not to have been prepared and issued by the defendant company.

POSTON & MOORMAN for appellant.

J. M. DICKINSON, PIRTLE, TRABUE, DOOLAN & COX, of counsel.

### POINTS AND AUTHORITIES.

1. The court erred in refusing to peremptorily instruct the jury to find for the defendants at the conclusion of plaintiff's testimony, and again at the conclusion of all the evidence.   (Brown's Adm'r v. L. & N. R. R. Co., 97 Ky., 228; Bowling Green Stone Co. v. Capshaw, 23 Ky. Law Rep., 945; Ky. Cen. R. R. Co. v. Gastineau's Adm'r, 83 Ky., 119; Thompson on Neg., sec. 237; sec. 428; sec. 432; Eastern Ky. R. R. Co. v. Powell, 17 Ky. Law Rep., 1081; Dilas' Adm'r v. C. & O. R. R. Co., 24 Ky. Law Rep., 1347; L. & N. R. R. Co. v. Hocker, 24 Ky. Law Rep., 982; Clarke's Adm'r v. L. & N. R. R. Co., 18 Ky. Law Rep., 1086; Jacobs v. O. & B. R. R. Co., 20 Ky. Law Rep., 189; Bush v. Grant, 22 Ky. Law Rep., 1766; City of Mayfield v. Guilfoyle, 23 Ky. Law Rep., 43; Brown's Adm'r v. L., H. & St. L. R. R. Co., 23 Ky. Law Rep., 1504; I. C. R. R. Co. v. Mercer, 24 Ky. Law Rep., 908; Beach on Con. Neg., sec. 44; sec. 364; sec. 373; M. & C. R. R. Co. v. Graham, 53 A. & E. R. R. Cases, 401; Williams v. L. & N. R. R. Co., 103 Ky., 298; L. & N. R. R. Co. v. Hiltner, 21 Ky. Law Rep., 1826; L. & N. R. R. Co. v. Scanlon, 22 Ky. Law Rep., 1400; L. & N. R. R. Co. v. Hiltner, 22 Ky. Law Rep., 1141; Gulf, etc., Co. v. Ryan, 33 A. & E. R. R. Cases, 289; Darrocott v. C. & O. R. R. Co., 83 Va., 288; Elliott on Railroads, sec. 1282; Sherman and Redfield on Neg., sec. 207; Lockwood's Adm'r v. C. & N. W. R. R. Co., 6 A. & E. R. R. Cases, 151; Pa. Co. v. Whitcomb's Adm'r, 31 A. & E. R. R. Cases, 155; St. Louis, I. M. & S. R. R. Co. v. Rice, 4 L. R. A., 173; L. & N. R. R. Co. v. Bowcock, 21 Ky. Law Rep., 383.)

2. Errors of the court in giving instructions offered by appellee and refusing to give instructions offered by appellants.   (Washing-

ton Mfg. & Mining Co. v. Barnett, 19 Ky. Law Rep., 958; P. & M. R. R. Co. v. Hoehl, 12 Bush, 41; L. & N. R. R. Co. v. Coniff's Adm'r, 16 Ky. Law Rep., 296; I. C. R. R. Co. v. Dick, 12 Ky. Law Rep., 172; Bowling Green Stone Co. v. Capshaw, 23 Ky. Law Rep., 945; Pa. R. R. Co. v. Whitcomb's Adm'r, 31 A. & E. R. R. Cases, 155; Eckert v. L. I. R. R. Co., 43 N. Y., 502; Cook v. Johnson, 58 Mich., 437.)

3. The court permitted incompetent testimony to go to the jury on behalf of appellee, much of which was perjudicial to the rights of appellant. (N. R. R. Co. v. Webb, 99 Ky., 340; Deerfield v. Northwood, 10 N. H., 269; State Bank of Wis. v. Dutton, 11 Wis., 374; G. C. & S. T. R. R. Co. v. Levy, 59 Texas, 551; Taylor v. Adams, 58 Mich., 187; Holt Will Case, 180 U. S., 552; Haupt v. Utah, 120 U. S., 438.)

4. The misconduct of counsel for appellee in his closing argument to the jury. (McHenry Coal Co. v. Sneddon, 98 Ky., 604.)

L. A. FAUREST for appellee.

## POINTS AND AUTHORITIES.

1. The Hardin Circuit Court had jurisdiction because plaintiff resided in Hardin county when this suit was brought. (Civil Code, sec. 73; Turner's Adm'x v. L. & N. R. R. Co., 23 Ky. Law Rep., 340; Sherrill v. C., O. & S. W. R. R. Co., 89 Ky., 302; L. & N. R. R. Co. v. Gilliam's Adm'r, 24 Ky. Law Rep., 1538; Am. & Eng. Enc. of Pl. & Pr., vol. 18, p. 304; Dillon on Removal of Causes, sec. 101.)

2. The court did not err in striking out parts of the bill of exceptions.

3. A peremptory instruction should not have been given.

4. Stith was not guilty of contributory negligence in going on the main track. (Jaggard on Torts, 1001, Buckles v. Cent. Iowa R. Co., 64 Ia., 609; Starin v. Rexter, 73 N. Y., 601; Wasmer v. Deleware, &c., R. Co., 80 N. Y., 212, 218; 36 Am. Rep., 608; Leming v. I. C. R. R. Co., 81 Ia., 254; Sherman & Redfield on Neg., sec. 207, 4th Ed.)

5. Even if Stith was guilty of contributory negligence or violated a rule, a peremptory instruction should not have been given. (L. & N. R. R. Co. v. McCoy, 81 Ky., 415; Cahill v. Cincinnati, &c., R. Co., 92 Ky., 354; L. & N. R. R Co. v. Coniff's Adm'r 16 Ky. Law Rep., 298; L. & N. R. R. Co. v. Earl's Adm'x,. 94 Ky., 374; P., C., C. & St. L. R. Co. v. Lewis, 18 Ky. Law Rep., 957; L. & N. R. R. Co. v. Adam's Adm'r, 106 Ky., 859; Crowley v. L. & N. R. R. Co., 21 Ky. Law Rep., 1434; O. & C. R. R. Co. v. Hill, 21 Ky. Law Rep., 1638; C. & O. R. R. Co. v. Kellin, 22 Ky. Law Rep., 1942; I. C. R. R. Co. v. Mahan, 17 Ky. Law Rep., 1200; L. & N. R. R. Co. v. Lowe, 80 S. W. Rep., 770; Thompson on Negligence, sec. 239; Schlereth v. Mo. Pac R. Co., 115 Mo., 106; B. & O. R. R. Co. v. State, 33 Md.,

Illinois Central Ry. Co., &c. v. Stith's Adm'x.

542; Gessly v. Mo. Pac. R. Co., 32 Mo. App., 413; Shoner v. Penn. Co., 130 Ind., 70; Kelly v. Union R. & T. Co., 95 Mo., 279; Howard v. Deleware & H. Canal Co., 40 Fed. Rep.; I. C. R. R. Co. v. Barrow, 5 Wall., 90.)

6. Cofer was guilty of negligence.

7. The instructions refused did not express the law of the case.

8. No incompetent testimony was received.

9. While appellee could not recover because of the negligence of Turner, yet the negligence of Turner did not bar a recovery for the negligence of Cofer. (C., N. O. & T. P. R. Co. v. Roberts, 23 Ky. Law Rep., 264; St. L., I. M. & S. W. R. Co. v. Neal [Ark.], 78 S. W. Rep., 220; Sherman & Redfield on Negligence, sec. 187 and note 3 (4th Ed.); 2 Jaggard on Torts, 1051; K. C., &c. R. R. Co. v. Beeker [Ark.], 48 L. R. A., 819.)

10. The statements made by counsel in argument are not grounds for reversal.

OPINION BY JUDGE NUNN.—Reversing.

The appellee's intestate was an engineer on a work train of appellant, and was killed on December 27, 1902, at Caneyville, Grayson county, Ky. The decedent at the time of his death was a resident of Louisville, Jefferson county, Ky., where the appellee qualified as the administratrix of his estate. She, as such administratrix, instituted this action in the Hardin Circuit Court, and, in substance, alleged in the petition that appellants, Illinois Central Railroad Company and one Louis Cofer, an engineer in the employ of the railroad company, by gross negligence ran its engine and train of cars on its railroad, upon which Cofer was acting as engineer, with great force and violence, against the engine in charge of her intestate, and upon which he was at the time, and against the cars attached thereto, and against her intestate, and did thereby kill him, to appellee's damage in the sum of $20,000. The appellant first filed a plea to the jurisdiction of the Hardin Circuit Court stating that the accident occurred in Grayson county, Ky.; that Stith, at the time he was killed, was a citizen and resident of

Jefferson county, Ky.; that appellee qualified as his administratrix in Jefferson county, Ky., and that she resided in Jefferson county at the time of filing this suit, and still resided there; that appellant had its chief officer and offices which it had in Kentucky in Jefferson county at the time of filing this suit and ever since; that its co-appellant, Louis Cofer, did not reside in Hardin county at the time of the happening of the things complained of in the petition, and did not then reside in Hardin county. Upon these facts, it asked for a dismissal of the action because the Hardin Circuit Court did not have jurisdiction. The appellant, by answer and amended answers, traversed all the material allegations of negligence contained in the petition, and set up the separate defense of contributory negligence on the part of Stith, and also set out certain rules of the company for the government of its employes, and averred that Stith's position on the track at the time he was killed was taken in violation of these rules. It appears that the reply of appellee was lost from the record, and, in order to avoid delay and expense, it was agreed that all pleadings should stand as if all affirmative matter in them had been controverted of record, and as if all affirmative pleas that could have been made had been made thereto, and the affirmative pleas controverted of record. Thus the issues were fairly made up as to the place of residence of appellee at the institution of the action and down to the time of trial, and as to negligence, contributory negligence, and the violation of rules governing the service of decedent and other employes of the appellant company. Upon these issues there was a trial, and a verdict and judgment for appellee for $5,000 against both of the appellants. Their motion for a new trial having been overruled, they have appealed.

The first ground urged for a reversal is that the

lower court had no jurisdiction of the action. It appears from the record that at the time of Robert Stith's death he was a resident of Jefferson county, Ky., and appellee was appointed administratrix of his estate by the county court of that county. The injuries causing his death were inflicted in Grayson county. But at the time of the institution of this action the appellee was a resident of Hardin county, and the action was brought in that county and appellant's line of railroad passed through that county. These facts are virtually conceded by both sides. Appellants contend that the personal residence of the appellee in Hardin county did not confer jurisdiction upon the circuit court of that county to try the action. Section 73 of the Civil Code provides: "An action against such carrier for an injury to a passenger, or to other person or his property, must be brought in the county in which the defendant, or either of several defendants, resides; or in which the plaintiff or his property is injured; or in which he resides, if he resided in a county into which the carrier passes." This section fixes three localities where such an action may be brought, namely, the county of defendant's residence, the county where the injury was done, and the county of the plaintiff's residence, if the carrier passes into that county. Manifestly, the personal representative is the only plaintiff in this action, and the only person who could have brought it, for by section 6 of the Kentucky Statutes of 1903, it is provided that the action to recover such damages shall be prosecuted by the personal representative of the deceased. Therefore, according to the letter of the statute, the residence of the personal representative is one of the places where the action may be brought. When the General Assembly enacted section 73 of the Code, it evidently had the convenience of all parties in mind.

Therefore it allowed the plaintiff to sue at the home
of the defendant, if he so desired, or go to the county
where the injury was inflicted, and where it would
probably best suit the convenience of the witnesses,
or to his own home county, provided the carrier passed
through such county. The purpose of this last clause
was to place the jurisdiction convenient to the plain-
tiff, and yet not inconvenient to the defendant. The
fact that plaintiff resided there would make it con-
venient for him, and the fact that the defendant passed
through the county would insure that it would not be
unreasonably inconvenient to it. There is reason in
this provision. If the home of the personal representa-
tive, in cases of death, is referred to, because he is the
one who must look after and prosecute the suit; but it
is absurd if the residence of the deceased is referred
to, for his convenience can no longer be consulted.
He can have no connection with the trial of the action.
Therefore we are of the opinion that the spirit as well
as the letter of the law requires the construction con-
tended for by appellee to be placed on this section.
(See the cases of Turner's Adm'r v. L. & N. R. Co.,
110 Ky., 879, 62 S. W., 1025; 23 Ky. Law Rep., 340; L.
& N. R. Co. v. Gilliam's Adm'r, 71 S. W., 863, 24 Ky.
Law Rep., 1536, and Sherrill v. C., O. & S. W. R. Co.,
89 Ky., 302, 11 Ky. Law Rep., 502, 12 S. W., 465.)

The substance of the facts as they appear in the
record is as follows: Appellee's intestate was em-
ployed by the appellant company in the capacity of
engineer, and was placed in charge of the engine on
one of its work trains. This train worked during the
day at Rosine tunnel, and laid up at night at the town
of Caneyville, where they had no yard master or yard
hands. The crew of the work train consisted of the
deceased; Fiffler, fireman; McCann, conductor, and
Turner, flagman. At night a watchman named Bell

was placed at the engine, but, under the rules of the company, he could not move it. The tank of this engine became leaky, and on the morning of December 27, 1902, before the usual time to arise, Stith, Eiffler, McCann, and Turner were all aroused at their boarding house by Bell, who informed them that the water had leaked out of the tank and was low in the engine, and that something had to be done at once. They all dressed and went to the engine. Stith went into the tank to repair the leak, and came out with dry feet. The engine had become hot for lack of water, and was getting hotter all the time. There was no night operator at Caneyville, and it was too early for the day operator. No. 104, a fast passenger train going north, was past due, but had been running from one-half hour to four hours late, and they had no means of knowing when that train would pass. They all considered the question whether they should flag No. 104, and take the engine out on the main track to a water tank near by, and take water, or whether they should draw the fire from the fire box and let the engine die. They realized that one of these things must be done at once, and concluded to flag No. 104 and take the engine out to the tank. Stith ordered Turner, the flagman, to proceed south and flag No. 104. Turner took his lantern and went to the curve south of Caneyville, 1,120 yards from the water tank, and, after Turner had reached this point, McCann threw the switch, and the engine was taken out on the main track to the water tank. McCann left the switch open, with the red light shining squarely down the track, and very soon thereafter No. 104 crashed into the work engine and killed Stith and Bell. The proof also shows that the distance from the water tank to the switch light, where the engine came upon the main track, was 215 yards, and the switch light was south

of the tank, and the track continued straight south for 905 yards to the point where Flagman Turner was. The appellant Cofer testified that 104 was one of four fast trains which had the right of way, under the rules of the company, over all other trains on the road; that he was the engineer on 104 that morning, and was going north; that he did not see Turner at the point named by him, attempting to flag his train, nor did he notice that the switch was turned and the red light was against him until he was about 100 yards from it, nor did he discover decedent's engine and caboose on the main track until the headlight on his engine shone upon the caboose of the decedent's train; that he then immediately applied the emergency brakes, but could not stop his train, and the collision occured with such force as to throw both engines' from the track; that, when he first saw the red light of the switch, the thought occurred to him that the crew of some train leaving there had left it turned; that he could with his train pass over it without injury, as his train was going north, but the switch was so constructed that it would have been dangerous for a south-bound train to have attempted to pass it.

The appellants contend, under the facts as proven, that they were entitled to a peremptory instruction, for the reason that Stith took his train from the side track, a place of safety, and placed it at the water tank on the main track, in a place of danger, when he knew that 104 was due, and had not passed, and under the rules of the company it was entitled to the right of way, as against his work train. Appellee contends that her intestate was not guilty of any negligence; that he was confronted with an emergency which required prompt action to avert injury to the engine in his charge, which by the rules of the company he was required to protect, and also to avert loss of time

to the train crew of hands at Rosine tunnel, which would have resulted if he had drawn the fire from the box and permitted the engine to die—and refers to rule 106 of the company which reads, "In all cases of doubt and uncertainty, the safe course must be taken and no risks run," and claims that, being confronted with this emergency, he exercised his best judgment, and it was for the jury to say whether he exercised this judgment properly under all the circumstances. We are of the opinion that appellee's intestate erred in taking his engine upon the track under the circumstances. He knew that 104 was entitled to the right of way, and by his going upon the main track with his engine he would probably impede the progress of this fast passenger train, which had important connections to make for the benefit of passengers, and might endanger the lives of the passengers and the company's employes and its property, which unfortunately did occur by reason of his mistake and violation of the rules. He should not have taken the risk, but should have taken the safe course and remained on the side track. But this being true, it does not necessarily follow that appellant was entitled to the peremptory instruction. The rules of the company, as shown in the record, required its engineers "to keep a constant and vigilant lookout for signals and the positions of switches while running, and not to pass red signals and red lights on the switches, but must stop and as certain the cause." It is further provided by the rules that when a train stops or is delayed, or the main track is obstructed, the same must be protected by the flagman when necessary to prevent accident. In the case at bar, the deceased, confronted with the emergency stated, and in an endeavor to protect the property and interest of his employer, obstructed the main track by placing his engine at the water tank.

But before doing so he sent out the flagman, with his red light and a torpedo, 1,120 yards in the direction from which 104 was coming, for the purpose of flagging it. The red switch light was also turned against it. The deceased knew that the rules of the company required Cofer, in charge of 104, to stop his train, and not to pass these red signals; and he had the right to assume that he would perform his duty under the rules, and would keep a constant and vigilant lookout for signals and switches, especially in a town; and, if Cofer had done so, decedent would not have been injured or killed. In view of the peculiar facts of this case, we are of the opinion that appellee's intestate violated the rules of the company in taking his engine out on the main track, and, if he had done so without sending out the flagman and turning the switch light, thereby giving notice or warning to the engineer of 104, the court should have given a peremptory instruction to find for appellant. But conceding that he erred in judgment as to his duty, the facts show that it was an honest mistake. His purpose was to protect the property of his master. He took all the necessary steps and precautions provided by the rules to notify and warn Cofer of his situation on the main track. Under these facts and circumstances, we are not willing to say that decedent cut himself off from all right of protection.

Appellants contend that unless the judgment is reversed, with directions to the lower court to grant them a peremptory instruction, we will, in effect, overrule the opinions in the cases of L. & N. R. Co. v. Hiltner, 56 S. W., 654, 21 Ky. Law Rep., 1826; L. & N. R. R. Co. v. Scanlon, 60 S. W., 643, 22 Ky. Law Rep., 1400; L. & N. R. Co. v. Howard's Adm'r, 82 Ky., 212, 6 Ky. Law Rep., 163; N. M. & M. V. Co. v. Deuser, 97 Ky., 92, 13 Ky. Law Rep., 734, 29 S. W., 973; and

Brown's Adm'r v. L. &. N. R. Co., 97 Ky., 229, 17 Ky. Law Rep., 145, 30 S. W., 639.  After an examination of the cases, we are of the opinion they do not apply to the facts of the case at bar.  The last three cases were cases of ordinary trespassers, and at places where they had no right under any circumstances to be, and the company was not required to keep a lookout, and owed them no duty except to save them if discovered in time.  The first two cases cited are cases where the engineers were injured by reason of the violation of rules, but they did not give or attempt to give the company or its agents in charge of other trains any notice or warning of their perilous positions, as required by the rules, so as to place the company or its agents under the duty of exercising care to avoid injuring them.

We are of the opinion that the principles announced in the following cases, when considered with reference to the particular facts of this case, negative the idea that appellants were entitled to a peremptory instruction: L. & N. R. Co. v. McCoy, 81 Ky., 415, 5 Ky. Law Rep., 397; L. & N. R. Co. v. Earle's Adm'r, 94 Ky., 368, 15 Ky. Law Rep., 184, 22 S. W. 607; I. C. R. Co. v. Mahan, 34 S. W., 16, 17 Ky. Law Rep., 1200; Cahill v. Cincinnati, etc., R. Co., 92 Ky., 345, 13 Ky. Law Rep., 714, 18 S. W., 2; L. & N. R. Co. v. Coniff's Adm'r, 27 S. W., 865, 16 Ky. Law Rep., 298; L. & N. R. Co. v. Adams' Adm'r, 106 Ky., 859, 21 Ky. Law Rep., 498, 51 S. W. 577; L. & N. R. Co. v. Lowe (Ky.), 118 Ky., 260, 25 Ky. Law Rep., 2317, 80 S. W., 770; and Bowling Green Stone Co. v. Capshaw, 64 S. W., 507, 23 Ky. Law Rep., 945, 65 L. R. A., 122.  In the last case cited, Capshaw was an employe of the stone company.  His duties were those of a carpenter in the company's mill.  When he was injured he was in front of a truck for the purpose of testing the stone thereon to see if

it had been sawed in straight lines, and while attending to this he was injured by the engineer backing the truck over his foot. The company claimed that Capshaw was not in a place or performing labor where his duties required him to be. This court in that case, in discussing an instruction, said: ''We are of opinion that this instruction is erroneous and prejudicial to appellant, in the use of the phrase 'or by the exercise of ordinary care might have known.' This placed upon appellant the duty of keeping a lookout for appellee at a place where he voluntarily placed himself, without orders, direction, or duty to be. If appellee, outside of the duties which he was employed to perform, and without direction from Douglas, the superintendent, so to do, went voluntarily into a place of danger—in front of the truck—he should have called attention to his position, so that the hookers or engineer would know of his peril, and would then be under the duty of exercising care to avoid injuring him. If appellee, being thus situated, without directions from Douglas, and outside of his duties, failed to give the hookers or engineer notice of his position, he would be guilty of contributory negligence, for which he could not recover.'' The principles enunciated in this case seem to completely cover the one at bar; i. e., if appellee's intestate, in violation of the rules, went voluntarily into a place of danger, onto the main track, on the time of 104, he should have called attention to his position, so that those in charge of 104 would have known of his peril, and would have then been under the duty of exercising care to avoid injuring him. It appears that the deceased performed this duty, and gave notice of his position in the way and manner prescribed by the rules. The only question that should have been submitted to the jury was whether those in charge of the

fast train, No. 104, saw, or by the exercise of ordinary care could have seen, the train in charge of Stith in time to have stopped or checked his train, and saved Stith from injury and death. If so, the appellee should recover; otherwise the findings should be for the appellants.

On the trial, appellee, over the objection of appellants, introduced in evidence some professed tests of the Westinghouse air brakes, appearing in the back of a book of instructions with reference to the use and operation of such brakes. We are of the opinion that the court erred in permitting this to be introduced as evidence. These professed tests were nothing more than advertisements of the makers for the purpose of inducing purchasers, and they seem not to have been prepared and issued by appellants.

For these reasons, the judgment is reversed, and cause remanded for further proceedings consistent with this opinion.

Petition for modification by appellants overruled.